Maude M. WUNSCHE, Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES et al., Appellees.

No. 7934.

Court of Civil Appeals of Texas.

April 14, 1977.

Richard G. Rorschach, Houston, for appellant.

Ronald L. Blackstock, George M. Kuhn, Jr., Houston, for appellees.

STEPHENSON, Justice.

The Equitable Life Assurance Society of the United States filed this interpleader to have the court determine who was entitled

to the proceeds of the insurance policy on the life of William M. Brasher. The claimants in the trial court were the mother, Maude M. Wunsche, and Marie Brasher, the divorced wife of the deceased, who made a claim on behalf of their daughter, Kimberly Brasher, a minor. Trial was before the court, and judgment was rendered for Kimberly Brasher.

The undisputed evidence shows the following: William Brasher and Marie Brasher were married May 21, 1966, and Kimberly Brasher was born May 26, 1969. Marie filed a divorce suit August 21, 1970. During all times material to this cause of action, William was employed by Armco Steel Corporation and participated in its group insurance plan. Such plan included medical, dental, hospitalization, and life insurance on William and his dependents. William had Marie named as his beneficiary when they were married, but named his mother, Maude Wunsche, as his beneficiary August 21, 1970, which was the day Marie filed the divorce suit. Kimberly was named as a dependent when she was born and until William's death. September 18, 1970, a property settlement, child custody and support agreement was entered into by William Brasher and Marie Brasher. The insurance policy was not listed as an asset because it was term insurance and had no cash value. Paragraph V of that agreement reads as follows:

"Defendant, WILLIAM M. BRASHER, is to provide and maintain the hospital, medical, dental and life insurance presently in existence for the benefit of the minor child, KIMBERLY MARIE BRASHER."

The divorce was granted December 10, 1970, and the property settlement was approved by the court. Marie was awarded custody of Kimberly, and William was ordered to pay $75.00 per month as child support. These payments were made until William died February 24, 1972. Maude Wunsche was still listed as the beneficiary under the $17,000 life insurance policy made the basis of this suit. This policy was the only one in effect at the time of the agreement, September 18, 1970.

The trial court made findings of fact and conclusions of law. These conclusions were, in effect, as follows:

(1). Kimberly was a third party beneficiary under settlement agreement.

(2). Promissory estoppel estops the change of beneficiaries.

(3). The change of beneficiaries under the circumstances amounted to constructive fraud and created a constructive trust for the beneficiary.

(4). A constructive trust is created for Kimberly in order to prevent unjust enrichment.

 The first two points of error, and the primary basis for this appeal, are that there is no evidence to support the trial court's finding that the insurance here sued upon is the one intended by the parties to be covered by the provision in the settlement agreement to-wit:

". . . life insurance presently in existence for the benefit of the minor child, KIMBERLY MARIE BRASHER."

and that such finding is contrary to the great weight and preponderance of the evidence. In passing upon the no-evidence point, we consider only the favorable evidence to such finding, and in passing upon the second point we consider the entire record.

There are no pleadings by any party that the provisions in the settlement agreement in question are ambiguous. Further, there is no suggestion in any of the briefs in this court that such provision is ambiguous, and on oral argument it was so agreed.

 It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). In that case it is also written:

"It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed

or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. *Woods v. Sims,* 154 Tex. 59, 273 S.W.2d 617, 620 (1954). See generally: 3 Williston on Contracts § 610 (1936); Restatement of the Law of Contracts § 230 (1932)."

There is no contention that the insurance policy, together with the designation of beneficiary, is in any way ambiguous. The construction of the provision in the settlement agreement is important to determine whether or not Kimberly was a third party beneficiary under an agreement between her mother and father to provide life insurance on her father's life for Kimberly's benefit.

The only life insurance in existence at the time the settlement agreement was executed, which could be for the benefit of the minor child, was the group policy sued upon in this case. Even though it is argued that there was a provision in the group policy covering the insured's dependents, which included Kimberly, there is no substance to such an argument because the insured was the beneficiary in the provision for a small amount of insurance on Kimberly's life, and there is no way that particular life insurance could be considered for her benefit.

■ The general rule in determining whether a person is a third party beneficiary, is clearly set forth in *Republic Nat. Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.), as follows:

"Parties are presumed to contract for themselves and it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties. *Citizens Nat. Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003 (1941)."

The settlement agreement before us is a classic example of a contract made for a third party beneficiary, and it is clearly shown that it was the intention of the parties to provide for Kimberly. The record

before us shows the amount of the support was set at $75.00 per month, and this court must take the judicial knowledge of the fact that such amount is unusually low. The further agreement to provide hospital, medical, dental, and *life* insurance for the child's benefit makes the amount of child support more reasonable.

■ We construe the settlement agreement to mean that William Brasher would name Kimberly as his beneficiary in the life insurance policy and that he would not change the beneficiary as long as he was making child support payments. We reach that conclusion even though under the terms of the insurance policy itself, he had the right to change the beneficiary.

The case we have found most nearly like the one before us is *Box v. Southern Farm Bureau Life Ins. Co.,* 526 S.W.2d 787 (Tex. Civ.App.—1975, writ ref'd n. r. e.). In that case the husband and father (in the same position as William Brasher) entered into a property settlement agreement with his wife in which he agreed to keep certain life insurance policies in effect with their children as the beneficiaries. The divorced husband remarried later and named his new wife as the beneficiary. After his death, the insurance company filed an interpleader, and the surviving wife, who was the named beneficiary, and his children claimed the proceeds. The trial court awarded the funds to the children which action was affirmed by the Court of Civil Appeals. That court held the property settlement agreement gave the children a vested equitable interest in the proceeds of the insurance policy upon their father's life. That case cites *Locomotive Engineers' Mut. Life & Accident Ins. Ass'n v. Waterhouse,* 257 S.W. 304 (Tex.Civ.App.—El Paso 1923, writ ref'd), and *Leal v. Leal,* 401 S.W.2d 293 (Tex.Civ.App.—San Antonio 1966, no writ), in support of its holding. Also, see out of state cases collated in *Box, supra* at 789. These points of error are overruled.

We have carefully considered the remaining points of error, and finding no merit to them they are overruled.

AFFIRMED.