METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

James E. McSHAN, et al., Defendants
and Third-Party Plaintiffs,

Esther M. McShan, Third-Party
Defendant.

No. C–82–6890 RFP.

United States District Court,
N.D. California.

Sept. 13, 1983.

Richard J. Kilmartin, Knight, Boland & Riordan, San Francisco, Cal., for plaintiff.

Richard P. Cotta, San Jose, Cal., for defendants and third-party plaintiffs James E. McShan, et al.

Robert G. Bereman, Visalia, Cal., for third-party defendant Esther M. McShan.

MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

In 1954, plaintiff Metropolitan Life Insurance Company ("Metropolitan") issued a group life insurance policy pursuant to the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA"). Ellis McShan, an eligible federal employee, became insured under this policy.

On October 8, 1970, Ellis McShan executed a form entitled "Designation of Beneficiary" (Stipulation, Exhibit C) in which he named his four children (defendants and third-party plaintiffs herein) as beneficiaries in equal shares.

In February, 1971, an Interlocutory Judgment was entered in a marriage dissolution action under which Ellis McShan was ordered to maintain all of his children as beneficiaries of his life insurance policy. Final Judgment of Dissolution was entered on June 30, 1971, incorporating the provi-

sions of the Interlocutory Judgment. Stipulation Exhibits D and E.

On August 14, 1972, Ellis McShan executed a second designation of beneficiary form in which he named his second wife, third-party defendant Esther McShan, as sole beneficiary. Stipulation, Exhibit F.

Ellis McShan died on July 25, 1982, at which time his life insurance policy was worth $13,000. The designation of beneficiary naming Esther McShan was in force and had not been revoked or changed by Ellis McShan on the date of his death.

Plaintiff Metropolitan and third-party defendant Esther McShan contend that FEGLIA and the regulations promulgated thereunder are in direct conflict with the state court dissolution judgment ordering Ellis McShan to maintain his children as beneficiaries of the policy. They argue that, under the Supremacy Clause, federal law must control and Esther McShan is entitled to the proceeds. The defendants (Ellis McShan's children) contend that, although Esther McShan is the legal owner of the proceeds, a constructive trust should be imposed on the proceeds because of Ellis McShan's violation of the state court order. They contend that the court order gave them an equitable interest entitling them to the money.

Under FEGLIA (5 U.S.C. §§ 8701–8716 (1982)), the Office of Personnel Management ("OPM") is authorized to purchase a group life insurance policy from a qualified private insurance company to provide life insurance benefits to eligible federal employees. 5 U.S.C. § 8709 (1982).

The key FEGLIA provision in this action is section 8705, which provides in pertinent part:

(a) The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received

before death in the employing office .... For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

5 U.S.C. § 8705(a) (1982). The parties have stipulated that both designations of beneficiaries were properly executed and filed by Ellis McShan.

FEGLIA section 8716 authorizes the OPM to prescribe regulations necessary to carry out the purposes of the act. 5 U.S.C. § 8716(a) (1982). Pursuant to this section, regulation 870.901 was promulgated and provides in pertinent part:

(d) Any person, firm, corporation, or legal entity ... may be named as beneficiary.

(e) A change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary, *and this right cannot be waived or restricted.*

5 C.F.R. § 870.901 (1983) (emphasis added). The Supreme Court held that federal regulations have no less preemptive effect than federal statutes. *Fidelity Federal Savings & Loan Ass'n v. De la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

■ Under the preemption doctrine, state law is nullified to the extent that it actually conflicts with federal law. *De la Cuesta,* 102 S.Ct. at 3022. The state court order that McShan maintain his children as beneficiaries clearly restricted his right to change beneficiaries at any time. Therefore, the state court judgment is in direct conflict with the federal regulation that prohibits this right from being waived or restricted.

Defendants concede that Esther McShan is the legal owner of the proceeds of the policy. However, they contend that Esther McShan should be held to be an involuntary trustee of the proceeds because she gained title by reason of the wrongful act of Ellis McShan in disobeying the court order. They base this contention on California Civ-

il Code sections 2223 and 2224 which provide that one who detains or gains a thing by a wrongful act is an involuntary trustee of the thing gained. Cal.Civ.Code §§ 2223, 2224 (West 1954).

Their argument is without merit. The Supreme Court has held that federal law preempts state law where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *De la Cuesta*, 102 S.Ct. at 3022, *citing Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). It cannot be doubted that Congress, by giving an insured the right to designate a beneficiary, intended to give the insured control over who would receive the proceeds of the policy. The state court order frustrates Congress' purpose by nullifying Ellis McShan's clear intent that Esther McShan receive the proceeds rather than his children.

The conclusion that FEGLIA preempts the state court order is consistent with the Supreme Court's decision in *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). In that case a divorce decree ordered Army Sergeant Ridgway to maintain an insurance policy on his life for the benefit of the Ridgway's children. At the time of the divorce, his life was insured under a policy issued by Prudential Life Insurance Company pursuant to the Servicemen's Group Life Insurance Act of 1965 ("SGLIA") and Ridgway's wife, April, was the designated beneficiary. Ridgway remarried and changed the policy's beneficiary designation so that the proceeds would be payable as provided by law. Under applicable law (38 U.S.C. § 770(a)), the proceeds would go to his second wife. The Maine Supreme Court imposed a constructive trust on the policy proceeds for the benefit of the children. The Supreme Court reversed, holding that SGLIA and related regulations preempted the state divorce decree. *Ridgway*, 454 U.S. at 59–60, 102 S.Ct. at 57–85.

The basic structure of SGLIA was patterned after FEGLIA. *Stribling v. United States*, 419 F.2d 1350, 1353 (8th Cir.1969).

Both acts employ private insurance carriers (*compare* 5 U.S.C. § 8702 *with* 38 U.S.C. § 767) and the designation of beneficiary provisions of the two acts are virtually indistinguishable. SGLIA section 770(a) provides that insurance proceeds are to be paid "First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received prior to death...." 38 U.S.C. § 770(a) (1976). The regulations pertaining to SGLIA provide that an insured "may designate any person, firm, corporation or legal entity" as beneficiary, and that any "designation or change of beneficiary ... will take effect only if it is in writing, signed by the insured and received [by the appropriate office] prior to the death of the insured ...." 38 C.F.R. § 9.16(f) (1982). And "[a] change of beneficiary may be made at any time and without the knowledge or consent of the previous beneficiary." 38 C.F.R. § 9.16(e) (1982). *See* corresponding FEGLIA provisions set out *supra*, at page 3. The Supreme Court concluded that the controlling provisions of SGLIA "prevail over and displace inconsistent state law." *Ridgway*, 454 U.S. at 60, 102 S.Ct. at 57–58.

The provisions of FEGLIA perhaps more strongly indicate that the state court order must yield to federal law in this case. The FEGLIA equivalent of 38 C.F.R. § 9.16(e) contains the additional admonition that the insured's right to change the beneficiary designation at any time "cannot be waived or restricted." 5 C.F.R. 870.901(e) (1983).

At least one district court has reached the conclusion advanced by plaintiff. In *Knowles v. Metropolitan Life Insurance Co.*, 514 F.Supp. 515 (N.D.Ga.1981), the insured was ordered in a divorce decree to maintain his ex-wife as beneficiary of his FEGLIA policy. Four days after entry of the decree, the insured changed the beneficiary designation to his second wife. His first wife contended that the divorce decree prevented him from making the change. After quoting 5 C.F.R. 870.901(e), the district court held:

This provision, having the force and effect of law, must control. The mar-

riage settlement agreement thus cannot operate as a waiver or restriction of the insured's right to change this beneficiary, and the named beneficiary, under the provisions of 5 U.S.C. § 8705(a), is entitled to the proceeds of the insurance policy at issue.

*Knowles,* 514 F.Supp. at 516. *Knowles* is indistinguishable from the present case.

The defendants argue that *Ridgway* is not controlling here. They rely instead on a Texas state appellate decision, *Roberts v. Roberts,* 560 S.W.2d 438 (Tex.Civ.App. 1977). In *Roberts,* decided before *Ridgway,* the insured was ordered in a divorce decree to maintain his children as sole beneficiaries of his FEGLIA policy. Ignoring that order, the insured designated his second wife as beneficiary. The Texas court found that FEGLIA did not preempt the divorce decree and imposed a constructive trust on the proceeds after they had been paid to the designated beneficiary. *Roberts,* 560 S.W.2d at 439–40.

A number of factors indicate that *Roberts* was wrongly decided. First, there was no mention in the *Roberts* opinion of regulation 870.901(e), which was controlling in *Knowles* and was in effect at the time *Roberts* was decided. *See* 5 C.F.R. § 870.- 901 (1969). In reaching its decision, the *Roberts* court distinguished an earlier Texas case where the court found a divorce decree preempted by the National Service Life Insurance Act ("NSLIA"). *McJunkin v. Estate of McJunkin,* 493 S.W.2d 278 (Tex.Civ.App.1973). NSLIA was the predecessor to SGLIA. The *Roberts* court noted that under NSLIA the federal government was the insurer, whereas under FEGLIA coverage is provided by private insurance companies. However, under SGLIA, the act involved in *Ridgway,* private companies also provide the insurance coverage. *Ridgway* may not be distinguished from the instant case on this ground.

The main basis upon which the *Roberts* court distinguished *McJunkin* was the fact that NSLIA contained an anti-attachment provision under which policy proceeds were not subject to attachment, levy or seizure by any legal or equitable process, either before or after receipt by the beneficiary. *Roberts* 560 S.W.2d at 439. Since FEGLIA contains no such provision, the *Roberts* court concluded that there was no federal provision "precluding the use of the equitable remedy of constructive trust—once the proceeds are in the hands of the beneficiary" (*id.*) and that imposition of the trust "did not in any manner change, alter, or affect the designated beneficiary." *Id.* at 440. While it is true that imposing the trust did not contravene the federal *procedures* for designation of a beneficiary, the *Roberts* court ignored the substantive rights which the procedures were designed to protect. It must be assumed that the federal provisions regarding designation of beneficiaries were intended to confer on the insured more than the right to do a meaningless act. If the proceeds are to go to someone other than the designated beneficiary, the act of so designating serves no purpose.

In addition, *Roberts* contains no reference to *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), in which the Supreme Court held that NSLIA preempted California community property law. In *Wissner,* the insured's widow attempted to assert her community property interest in one-half of the proceeds of the policy in which the insured's mother was designated the beneficiary. The Supreme Court found California law in direct conflict with the NSLIA section giving the insured the right to designate the beneficiary and to change that designation at any time. *Wissner,* 338 U.S. at 658–59, 70 S.Ct. at 399–400.

The *Wissner* Court concluded, "[w]hether directed at the very money received from the Government [under the policy] *or an equivalent amount,* the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress." *Id.* at 659, 70 S.Ct. at 400 (emphasis added). In view of this language, the distinction proffered by the defendants and the *Roberts* court between imposition of a constructive trust after the beneficiary re-

ceives the proceeds and a direct by-pass of the designated beneficiary cannot stand.

■ The mere fact that FEGLIA contains no anti-attachment provision is insufficient to support defendants' argument and the *Roberts* court's conclusion that a constructive trust may be imposed consistently with the provisions of the act. In both *Wissner* and *Ridgway* the existence of an anti-attachment provision was an *independent* basis upon which the Supreme Court found preemption. *See Wissner,* 338 U.S. at 659, 70 S.Ct. at 400; *Ridgway,* 454 U.S. at 60, 102 S.Ct. at 57–58. In both cases, the Court found the designation provisions in sufficient conflict with state law to require preemption. *Id.*

In *Yiatchos v. Yiatchos,* 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), a husband purchased U.S. Savings Bonds with community funds and designated his brother as beneficiary to receive the bonds upon his death. Subsequently, the husband willed the bonds to other relatives. The Supreme Court held that the brother was to be recognized as owner of all the bonds under a Treasury regulation requiring named beneficiaries to be so recognized, unless the husband's act in purchasing the bonds was a fraud or breach of trust with respect to his wife's community property rights. If fraud were found, however, the wife's community property rights entitled her to one-half of the bonds. In remanding the case, the Court directed that the issue of whether the husband's act constituted fraud was to be determined by federal law. *Id.* at 309, 84 S.Ct. at 744.

In *Ridgway,* the Court distinguished the case before it from the holding in *Yiatchos* that the wife's community property interest would control over the Treasury regulations. The *Ridgway* Court stated:

> Yiatchos had imposed his will upon property in which his wife had a distinct vested community interest. In contrast, only Sergeant Ridgway had the power to create and change a beneficiary interest in his SGLIA insurance. By exercising that power, he can hardly be said to have committed fraud.

*Id.* 454 U.S. at 60, 102 S.Ct. at 57. Rather, the Court characterized Ridgway's act as "noting more than a breach of contract." *Id.* at 59, 102 S.Ct. at 57. The Court noted that the decedent's children may have had a claim against his estate for that breach but they were not entitled to the policy proceeds. *Id.*

■ This court concludes that FEGLIA, related regulations and federal case law all indicate that the state court order, being in direct conflict with federal law, must yield. Accordingly, third-party defendant Esther McShan is entitled by law to the proceeds of the life insurance policy without restriction.

SO ORDERED.